**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VALDEZ J. STRAUGHTER,

    Plaintiff,

             v.

ANDREW EDDY, *et al.*,

    Defendants.

Case No. 2:23-cv-1268

Morrison, J.
Bowman, M.J.

**ORDER**

Under local practice, this prisoner civil rights case has been referred to the undersigned magistrate judge. The undersigned has filed a Report and Recommendation ("R&R") to address two motions to dismiss. This Order addresses non-dispositive matters, including: (1) Service on the Defendants; (2) a Motion to Stay Discovery pending resolution of the Defendants' Motion to Dismiss, (Doc. 22); and (3) Plaintiff's "Motion to Correct Mailing Procedure to Protect First Amendment Rights." (Doc. 25).

**I.     Service and Responsibility to Answer the Complaint**

The R&R filed this day recommends the denial of the motion to dismiss filed by the State of Ohio on behalf of all Defendants. The same R&R recommends granting Plaintiff's unopposed motion to dismiss four Defendants. The record reflects that three of the four remaining Defendants (Eddy, Murphy, and Stanforth) were served on July 10, 2023, with their answers due on July 31, 2023. (Doc. 27). The fourth remaining Defendant, Kenneth Saul, has not yet been properly served. (Doc. 28). The summons forms were not returned and filed in the record until after the deadline for filing an answer or other response had elapsed.

Apart from the motion to dismiss filed by the State on behalf of all Defendants before service, none of the Defendants filed a timely answer. Instead, on August 25, 2023, counsel filed a new (untimely) motion to dismiss on behalf of the five Defendants as to whom summons was returned executed. Defendants' motion is not accompanied by a motion to file their otherwise untimely response to the complaint *instantur*, and mostly repeats arguments contained in the Rule 12(b)(6) motion previously filed by the State of Ohio. But in addition to the duplicative arguments, the Defendants' motion contains newly presented arguments on issue and claim preclusion and the application of the *Leaman* doctrine.[1] *See Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987) (en banc), *cert. denied*, 487 U.S. 1204 (1998)

The record reflects that summons was returned unexecuted as to Defendant Saul. (Doc. 28). Because Plaintiff proceeds *in forma pauperis*, the Court is tasked with perfecting service. In another case in which service was returned unexecuted, this Court observed:

> Although prisoner-litigants are required to provide sufficient identifying information to permit the United States Marshal to serve each Defendant, they are not required to do the impossible. For security reasons, prisoners are prohibited from obtaining the home addresses of current or former prison personnel. In this case, it is unclear whether the two Defendants presently work at a different prison location or whether they will be represented by the Attorney General, assuming service can be perfected.

*Dearing v. Mahalma*, No. 1:11–cv–204, 2011 WL 6752629, at *2 (S.D. Ohio Dec. 2, 2011). In *Dearing*, the Court directed the Attorney General to submit *in camera* the home address of two defendants who no longer worked at the prison, so that the U.S. Marshal Service

---

[1] By separate R&R, the undersigned has recommended the denial of the State's motion to dismiss based solely on the duplicative arguments. The R&R does not address any of the newly presented arguments.

could attempt to service without disclosing the home address to Plaintiff. In the above-captioned case, the receipt for service indicates a notation of "return to sender" but does not otherwise reflect <u>any</u> basis for the failure of service. Before re-issuing summons and directing service at the same address, the Court will direct defense counsel to confirm whether she is now authorized to waive service on behalf of Defendant Saul. If she cannot or will not accept service, counsel will be directed to state whether Defendant still works at the address to which the previous summons was mailed.

In the interests of justice, the Court also will extend the time in which Defendants' answer was due and accept the tardy motion to dismiss that was recently filed on behalf of the five Defendants on whom service was perfected.

## II.    Motion to Stay Discovery

Plaintiff filed multiple written discovery requests with the Court. Although the Court struck the requests as procedurally improper on July 12, 2023, the Court's Order deemed the requests to have been served on Defendants on the date that they were filed with the Court. (Doc. 19). Defendants seek to stay discovery pending resolution of the motion to dismiss, while Plaintiff opposes any stay. (Docs. 22, 24). Because the Defendants' new motion to dismiss presents significant new arguments regarding collateral estoppel, res judicata, and the *Leaman* doctrine, the undersigned will grant a short stay of discovery pending resolution of that new motion.

## III.    Motion to Correct Mailing Procedure to Protect
     First Amendment Rights

Plaintiff's motion requests an order directing the Clerk of this Court to obtain a "valid control number" from the Ohio Department of Rehabilitation and Corrections ("ODRC"), to prevent Plaintiff's legal mail in *this* case from being opened, read, and copied

before its delivery to him with regular institutional mail. Plaintiff's motion is unopposed. In order to understand what Plaintiff is asking, some context is required.

### A. Ohio's New Procedures for Classifying "Legal Mail"

Until last year, no such procedure would have been necessary, because the Ohio Administrative Code protected "legal mail" from "a court of law" from being opened and inspected for contraband outside the presence of the inmate-addressee, and prohibited the copying of legal mail. Specifically, Ohio institutions complied with the following Administrative Code provision:

> (2) "Legal mail" is mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee. It may be opened and inspected for contraband only in the presence of the inmate-addressee. "Legal mail" does not include postcards from a court of law that indicates fees and/or fines owed by the inmate-addressee.

O.A.C. 5120-9-17(B)(2) (valid through April 7, 2022).

But on or about February 1, 2022,[2] the ODRC adopted a significant <u>new</u> policy specific to the receipt of what had been classified as "legal mail." *See* 75-MAL-03. The new policy states that mail from a court of law (as well as all other formerly classified "legal mail") may be treated as "regular, <u>non-legal mail</u>" *unless* the sender first applies for and obtains a "valid control number" from the ODRC, and affixes that control number to the envelope of every piece of mail addressed to an inmate**.** To be clear, a single control number obtained by the sender will not do. Instead, the sender must obtain a *unique*

---

[2]February 1, 2022 is the date of the published policy. *But see Brown v. Chambers-Smith*, 2:22-cv-2469-MHW-MRM, 2023 WL 2534816, at *1 (S.D. Ohio, March 16, 2023) (alleging in lawsuit challenging new policy that an October 4, 2021 email notified inmates of new requirement for a "control number" to be attached to "Intended Legal Mail" despite existing policies, and that "ODRC had already been enforcing these changes months prior to the October 2021 email.").

control number *for each piece of mail* sent to an inmate. And control numbers expire within 21 days.

As the ODRC explains on its website:

If a court, clerk, or other court personnel wants a parcel of mail to be processed by ODRC as confidential legal mail, then a control number needs to be obtained and used. Otherwise, all mail received from courts, clerks, and court personnel **will be processed as regular mail**, i.e., opened, copied and delivered to the addressee.

SUBJECT: PAGE OF , (ohio.gov) https://drc.ohio.gov/static/Forms/Visit_75-MAL-03%20(Feb%202022).pdf (emphasis added, accessed on Aug. 28, 2023).

On April 8, 2022, the Ohio Administrative Code was amended in a manner that is consistent with the new policy:

(2) "Legal mail" is mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee that is marked with a valid control number provided by the department. It may be opened and inspected for contraband only in the presence of the inmate-addressee. "Legal mail" does not include postcards from a court of law that indicates fees and/or fines owed by the inmate-addressee. If mail is received from any of the groups listed without a valid control number, then it may be treated as a regular, non-legal mail, as set forth in paragraph (B)(1) of this rule.

O.A.C. § 5120-9-17(B)(2).

Thus, for mail to be classified as "legal mail" by the ODRC, a qualified sender must: (1) register and be verified by the ODRC; (2) take additional steps to generate a unique control number through the ODRC website for each and every piece of "legal mail"; and (3) transcribe or affix that number to each envelope. An ODRC Attorney Information Packet available at drc.ohio.gov/visitation/legal-mail/legal-mail explains:

> [C]ontrol numbers will be available through a website that will generate a unique control number for each piece of Legal Mail. To access the website and receive a control number, each individual or legal services entity must have completed the registration and verification process. Once generated, the control number should be printed or written on the outside of the envelope by the sender. At the institution, a member of the mailroom staff will verify the legitimacy of the control number. If verified, staff will take the Legal Mail to the recipient, where it will be opened and inspected for contraband in front of them. The contents of the Legal Mail will be provided to the recipient and the envelope (with control number) will be destroyed to prevent misuse, such as duplicating or forging control numbers.

*Id.*

To implement the new policy, ODRC staff must screen legal mail in order to determine whether a "valid control number" exists. The new process takes time.[3] If the legal mail contains a "valid control number" then it must be logged into a computer system within 72 hours of receipt by the facility, "excluding weekends, holidays, or emergency situations," which periods would necessarily extend that processing time. 75-MAL-03 (VI)(A)(1). Only after being logged will "legal mail" be delivered and opened in the presence of the inmate-addressee; there is no time period listed for delivery. While legal mail with a valid control number "should never be copied," the envelope "may be copied for legitimate security concerns." 75-MAL-03 (VI)(A)(4) and (5).

If there is no control number, and whether or not the sender is a court or attorney, the mail is considered to be "regular non-legal mail," subject to being opened, inspected,

---

[3]Many court communications are time-sensitive. For example, a prisoner has only fourteen days in which to file objections to a Report and Recommendation that may be dispositive of his or her case. *See Brown v. Chambers-Smith*, Case No. 2:22-cv-2469-MHW-MRM, 2023 WL 2534816, at *2 (S.D. Ohio, March 16, 2023) (noting that plaintiff previously missed the deadline for filing objections due to delayed delivery of "regular" mail); *see also, id.* at Doc. 22 (defendant's report that R&R sent in that case was processed as regular or non-legal mail and not tracked or logged in the same manner as legal mail, because it did not contain a control number).

read and copied outside the inmate's presence. If a control number is "present but has expired," or is illegible or incomplete, staff "should contact the sender" to generate a new control number. The mail will be withheld indefinitely in the interim, see 75-MAL-03 (V)(B)(6) & (7), though the policy does encourage eventual delivery. "Staff are encouraged to contact senders to resolve issues associated with legal mail with the goal of delivering the mail and not to withhold the mail." 75-MAL-03(V)(B)(8). Still, if staff are unable to "verify" the item is legal mail, staff will withhold it. 75-MAL-03(V)(C). And of course, staff are entitled to withhold any mail, including legal mail with a valid control number, if they suspect that it may contain contraband. *Id.*

In *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003), the Sixth Circuit held that whether mail constitutes "legal mail" is question of law rather than one of fact. The *Sallier* court further held that mail from a court of law is "legal mail."[4] "In order to guard against the possibility of a chilling effect on a prisoner's exercise of his or her First Amendment rights and to protect the right of access to the courts, we hold that mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise. *Id*. at 877 (emphasis added). The *Sallier* court went on to proclaim: "There is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise." *Id*. at 877-878. Despite recognition of a constitutional right not to have legal

---

[4]In so doing, *Sallier* rejected the reasoning of some courts, including cases from the Seventh and Ninth Circuits, that exclude such mail from the definition of legal mail. *See, e.g.*, *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir., 1996). The circuits also appear to disagree about whether interference with legal mail infringes on the right of free speech as well as the right of access to the courts. *See, e.g.*, *Guajardo-Palma v. Martinson*, 622 F.2d 801, 802 (7th Cir. 2010). The distinction can be significant in part because a pattern and practice of infringement of free speech rights can state a claim without additional injury, but a claim of denial of access to the courts may require a showing of actual injury. *See generally*, *Jones v. Brown*, F.3d 353-358-60 (3rd Cir. 2006); *Davis v. Goard*, 320 F.3d 346, 351-52 (2d Cir. 2003).

mail opened outside of a prisoner's presence upon request, *Sallier* also reaffirmed that prison officials "may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Id*. at 873.[5]

In light of *Sallier* and similar controlling case law that holds that legal mail is entitled to special protections under the First Amendment, it is no surprise that ODRC's new policy has generated constitutional challenges. To date, those challenges have led to decidedly mixed results, at least at the pleading stage.[6] For example, in *Quinn v. Doe*, Case No. 3:22-cv-661, 2023 WL 4744280, at *3-4 (N.D. Ohio, July 23, 2023), U.S. District Judge Jeffrey Helmick denied the defendants' motion to dismiss, holding that the plaintiff had plausibly alleged the violation of a clearly established principle of law. The court also denied qualified immunity on grounds that *Sallier* clearly established that legal mail from a court cannot be opened outside the presence of a prisoner who has specifically requested otherwise. *Accord Allah v. Chambers-Smith*, 2:22-cv-21-EAS-KAJ, 2023 WL 4030632, at *2 (S.D. Ohio, June 15, 2023), *R&R adopted*, 2023 WL 5215408 (S.D. Ohio Aug. 15, 2023) (denying motion to dismiss complaint challenging policy on constitutional grounds as "premature," noting that policy is relatively new and the proposition that it is

---

[5]For example, in a prior case, the Sixth Circuit upheld as constitutional an "opt-in" policy that requires an inmate to submit a written request that legal mail not be opened outside his or her presence. *Id*. at 874, citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Because that constitutional policy applied in *Sallier*, prison officials who had opened legal mail *before* receiving the inmate's written request could not be held constitutionally liable for that action. *Id*. at 875.

[6]In *Fontroy v. Beard*, 559 F.3d 173 (3d Cir. 2009), the Third Circuit upheld as constitutional a Pennsylvania policy requiring the use of control numbers to identify legal or privileged mail. But *Fontroy* was decided on summary judgment based on a fully developed record in which the Pennsylvania authorities carried their evidentiary burden to show that the policy was reasonably related to safety and security concerns. The Pennsylvania policy at issue assigned a single control number to each sender, and authorized hand-delivery of legal mail without a control number. The policy has since been revised, including revisions made pursuant to settlement of other legal challenges. *See Walker v. Little*, 20-CV-4460, 2022 WL 580641, at *3 (E.D. Pa., Feb. 24, 2022) \. The current Pennsylvania policy provides a separate process for a "court control number." Control Number (pa.gov) **https//privilegedmails.cor.pa.gov/#/** (accessed on Aug. 28, 2023)

constitutionally valid "is far from well-settled."); *Brown v. Chambers-Smith*, No. 2:22-cv-2469-MHW-MRM, 2023 WL 1967514, at *2 (S.D. Ohio Feb. 13, 2023) (declining to find policy constitutional at motion-to-dismiss stage), *R&R adopted*, 2023 WL 2534816 (S.D. Ohio Mar. 16, 2023). But in two earlier cases, the courts rejected constitutional challenges. *See Whitman v. Gray*, No. 5:19-cv-1818, 2022 WL 621553 *2 (N.D. Ohio, Mar. 3, 2022) (Gwin, J., denying motion for protective order because it was "not the proper vehicle through which to raise a First Amendment challenge to the new ODRC legal mail policy," and stating that policy does not violate the First Amendment); *Allah v. Chambers-Smith*, Case No. 2:22-cv-21-EAS-KAJ, 2022 WL 16832626 (S.D. Ohio Nov. 9, 2022) (denying a motion for reconsideration of denial of preliminary injunctive relief relating to the legal mail policy). In fact, before a more complete review of the case law in connection with this case, the undersigned relied on *Whitman* as grounds for granting a motion to dismiss. *See McGowan v. Erdos*, Case No. 1:22-cv-35-SKB, 2023 WL 2743765, at *6 (S.D. Ohio, March 31, 2023) (R&R pending).

### B.  Plaintiff's Limited Request in this Case

Having set the stage, the undersigned returns to Plaintiff's request which - importantly - does not present a direct constitutional challenge to the new legal mail policy. Instead, Plaintiff limits his request to seek this Court's compliance with the ODRC policy in this case, to preserve his Constitutional right to have his legal mail only opened and inspected in his presence, rather than treated as non-legal mail that is not logged or tracked, and that may be freely read and copied by prison staff.

The undersigned is mindful that another magistrate judge in this district denied a similar request for control numbers after citing the holding of *Whitman v. Gray* that the

new policy is constitutional. *See Glenn v. Basham*, Case No. 1:22-cv-202-KLL, 2022 WL 17351406, at *3 (S.D. Ohio, Dec. 1, 2022).  But *Glenn v. Basham* was decided without the benefit of the more extensive and contrary analysis provided in the more recent cases of *Quinn v. Doe*, *Allah v. Chambers-Smith*, and *Brown v. Chambers-Smith*.

In considering the request at hand, the undersigned has concerns about the extraordinary administrative burden that the new ODRC policy appears to impose on this Court and on all courts of law that send legal mail to inmates. But the undersigned is also troubled by the fact that unless the Clerk obtains a control number for every piece of mail sent to Plaintiff, Plaintiff's explicit request for mail from this Court to be treated as "legal mail" will continue to be denied. The Court needs additional time to consider this issue and to consider the burden on the Clerk of Court. Thus, the motion is denied at this time, subject to refiling after 60 days from the date of this order.

### C.  Conclusion and Order

For the reasons stated above, IT IS ORDERED:

1. The motion to dismiss filed by Defendants Eddy, Justus, Murphy, Olibode, and Stanforth (Doc. 29) is accepted as timely filed on August 25, 2023, with Plaintiff to file any response in opposition to that motion on or before October 19, 2023;

2. On or before October 9, 2023, defense counsel must file a Notice with this Court either (a) authorizing a waiver of service on behalf of Defendant Saul; or (b) advising the Court if Defendant Saul continues to work at the address where summons was previously addressed;

3. Defendants' motion to stay discovery (Doc. 22) is GRANTED IN PART. Despite the resolution of the State's first motion to dismiss recommended in a separate

Report and Recommendation filed herewith, discovery should be stayed until 21 days after resolution of Defendants' August 25, 2023 motion to dismiss;

4. Plaintiff's motion to correct mailing procedure (Doc. 25) shall be DENIED, subject to refiling 60 days from the date of this order.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge